IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

DAVID SALICETI-VALDESPINO,

Plaintiff,

v.                                              CIVIL NO. 12-1325 (GAG)

WYNDHAM VACATION OWNERSHIP,

et al.,

Defendants.

## OPINION AND ORDER

David Saliceti-Valdespino ("Plaintiff") brings suit against Wyndham Vacation Ownership ("Wyndham") and Shawyn Maley ("Maley") (collectively "Defendants") for alleged violations of anti-discrimination and anti-retaliaion statutes. (See Docket No. 1.)  Specifically, Plaintiff brings claims of race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*  Plaintiff also brings claims for supplemental state law violations of Puerto Rico Law 100 of June 30, 1959 ("Law 100"), P.R. LAWS ANN. tit. 29, §§ 146 *et seq.*; Act 115 of December 20, 1991 ("Act 115"), P.R. LAWS ANN. tit 29, §§ 194a, *et seq.*; Article II, Section 1 of the Puerto Rico Constitution; and Articles 1802 and 1803 of the Civil Code of Puerto Rico ("Articles 1802 & 1803"), P.R. LAWS ANN. tit. 31, §§ 5141-5142. The claims against Maley were voluntarily dismissed by Plaintiff and Wyndham filed a motion for summary judgment seeking dismissal of Plaintiff's claims. (Docket Nos. 56 & 27.)  Plaintiff opposed the motion (Docket No. 43) and Wyndham replied (Docket No. 48).  After reviewing the parties' submissions and pertinent law, the court **GRANTS in part** and **DENIES in part** Wyndham's motion for summary judgment at Docket No. 27.

## I.    Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

Civil No. 12-1325 (GAG)

1   of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See FED. R. CIV. P. 56(a). "An issue

2   is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it

3   'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson

4   v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

5   The moving party bears the initial burden of demonstrating the lack of evidence to support the non-

6   moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to

7   support the nonmoving party's case. The burden then shifts to the nonmovant to establish the

8   existence of at least one fact issue which is both genuine and material." Maldonado-Denis v.

9   Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is

10  genuinely in dispute by citing particular evidence in the record or showing that either the materials

11  cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse

12  party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the

13  court finds that some genuine factual issue remains, the resolution of which could affect the outcome

14  of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477

15  U.S. 242, 248 (1986).

16       When considering a motion for summary judgment, the court must view the evidence in the

17  light most favorable to the non-moving party and give that party the benefit of any and all reasonable

18  inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make

19  credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate,

20  however, if the non-moving party's case rests merely upon "conclusory allegations, improbable

21  inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21

22  (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

23  **II.    Wyndham's Objection to Plaintiff's Additional Statement of Uncontested Facts**

24       Pursuant to Local Rule 56(c), Plaintiff submitted an additional statement of uncontested facts

25  to supplement Wyndham's statement of uncontested facts. (Docket No. 36.) In its reply brief,

26  Wyndham objects to these additional facts because Plaintiff failed to properly cite supporting

27

28                                               2

Civil No. 12-1325 (GAG)

evidentiary materials. (See Docket No. 48.)  In large part, Wyndham claims the facts are not

relevant because they involve judicial complaints filed by Plaintiff's coworkers. (See Docket No.

48-1.)  Wyndham does not deny that Plaintiffs coworkers have filed various complaints against

Maley and Wyndham. (See Civil Nos. 12-1287 (GAG), 12-1288 (JAF), 12-1485 (JAG), 12-1911

(SEC).)  Plaintiff uses various facts from these cases i.e., that other Wyndham employees brought

suit against Defendants for similar conduct, to demonstrate the legitimacy of Plaintiff's claims in

this case.  The court finds these facts to be relevant to demonstrate that other employees felt

discriminated against by Maley.  Additionally, they are relevant when arguing there was a culture

of discrimination, but the court cannot find the details of those allegations to be relevant to

Plaintiff's claims of discrimination.  Therefore, the court only includes those facts that are both

relevant and supported by the record.

**III.     Relevant Factual Background**

Wyndham provides vacation packages for locations throughout the United States. (See

Docket Nos. 27-1 ¶ 1; 35 ¶ 1.)  Wyndham has a number of regional offices and sale representatives.

(See id.)  As part of its development and marketing network, Wyndham operates a regional office

at the Wyndham Rio Mar Beach Resort in Rio Grande, Puerto Rico. (See Docket Nos. 27-1 ¶¶ 1-2;

35 ¶¶ 1-2.)  Wyndham's Human Resources Director, Lisette Lama ("Lama"), is stationed in

Pompano Beach, Florida. (See Docket Nos. 27-1 ¶ 3; 35 ¶ 3.)  When Lama needs local support,

Kerania Olmo ("Olmo") the Assistant Human Resources Director assists her. (See Docket Nos. 27-1

¶ 4; 35 ¶ 4.)  Richard Wieczerzak ("Wieczerzak") is Wyndham's Vice President of Sales and

Marketing for South Florida and Puerto Rico.  He is stationed in Pompano Beach Florida and

oversees the Rio Grande office. (See Docket Nos. 27-1 ¶ 6; 35 ¶ 6.)

Plaintiff was born in Puerto Rico. (See Docket Nos. 27-1 ¶ 10; 35 ¶ 10.)  He is a self-

identified Hispanic. (See Docket Nos. 27-1 ¶ 11; 35 ¶ 11.)  His former wife is black and his son is

of mixed-race. (See Docket Nos. 36 ¶ 5; 48-1 ¶ 5.)  Wyndham hired Plaintiff on March 7, 2011 as

a sales representative in the Rio Grande office. (See Docket Nos. 27-1 ¶ 7; 35 ¶ 7.)  It was Maley's

**Civil No. 12-1325 (GAG)**

decision to hire Plaintiff and Plaintiff reported directly to Maley.  (<u>See</u> Docket Nos. 27-1 ¶¶ 12-13; 35 ¶¶ 12-13.)  Maley received some training regarding employment matters during his orientation and employment at Wyndham.  (<u>See</u> Docket No. 27-4 at 4-6; 27-3 ¶ 7.)

When Plaintiff began working for Wyndham, he initially struck up a friendly relationship with Maley, but by all accounts, it lasted a very short period of time.  (<u>See</u> Docket Nos. 27-1 ¶ 17; 35 ¶ 17.)  Their relationship consisted of Maley offering to transport Plaintiff to the grocery store and the gym.  (<u>See</u> Docket Nos. 27-1 ¶ 18; 35 ¶ 18.)  Plaintiff became concerned with Maley's behavior and asserts he complained to Wyndham during his employment.  (<u>See</u> Docket No. 36-1 at 64-67.)

It is Wyndham's policy that each new employee receive an employee handbook.  Plaintiff admits he signed an acknowledgment of receipt for the handbook.  (<u>See</u> Docket No. 36-1 at 59-60.) However, Plaintiff states he did not receive a handbook until he complained of Maley's conduct. (<u>See</u> <u>id.</u>)  The handbook contains a clear non-harassment policy that seeks to provide a work environment free from all forms of harassment.  (<u>See</u> Docket Nos. 27-1 ¶ 22; 35 ¶ 22.)  Additionally, the handbook contains a procedure for employees to follow in order to report harassment in the workplace -essentially reporting the conduct to a superior.  (<u>See</u> Docket Nos. 27-1 ¶ 23; 35 ¶ 23.) The procedure requires Wyndham's human resources department to conduct a prompt and confidential investigation, which Plaintiff claims does not occur in practice.  (<u>See</u> Docket Nos. 27-1 ¶ 24; 35 ¶ 24.)

On April 29, 2011, Michelle Perez ("Perez"), Plaintiff's coworker, complained to Wieczerak regarding Maley's behavior.  (<u>See</u> Docket Nos. 27-1 ¶ 25; 35 ¶ 25.)  Wieczerak was with Lama at the time.  Lama took the information and stated she would conduct and oversee the investigation. (<u>See</u> Docket Nos. 27-1 ¶ 26; 35 ¶ 26.)  On May 2, 2011, Perez met with Olmo.  (<u>See</u> Docket Nos. 27-1 ¶ 27; 35 ¶ 27.)  Olmo, Perez, and Lama held a phone conference to discuss Perez's complaint. (<u>See</u> Docket Nos. 27-1 ¶ 28; 35 ¶ 28.)  This led to an investigation that included interviews with various Wyndham employees, including Plaintiff, Perez, and Maley.  (<u>See</u> Docket Nos. 27-1 ¶ 29;

4

**Civil No. 12-1325 (GAG)**

35 ¶ 29.) Maley was suspended pending the results of the investigation.  (See Docket Nos. 27-1 ¶¶ 30-31; 35 ¶¶ 30-31.)   During his interview, Plaintiff described Maley's behavior, specifically recalling that:  Maley made statements regarding his coworkers physical attributes and how his ideal woman would be a combination of them (referring to one coworker's "tits" and another's "ass"); Maley asked him and a coworker to buy drugs for him; Maley called black customers "fucking niggers," and; Maley requested Plaintiff to speak to another employee having difficulties at work in a threatening manner.  (See Docket No. 27-13 at 6.)  Some of these statements were made on multiple occasions.  (See Docket Nos. 36 ¶¶ 3-4; 48-1 ¶¶ 3-4.)  During this investigation, Plaintiff never complained that Maley discriminated against him.  (See Docket Nos. 27-1 ¶ 34; 35 ¶ 34.)

Plaintiff also claims Maley degraded Puerto Ricans.  Specifically, Plaintiff claims Maley said, "[t]hese people have got no money; it's a waste of time, you know, they're on Section 8."  (See Docket Nos. 36 ¶ 6; 48-1 ¶ 6.)  He made fun of another employee's accent and referred to Puerto Ricans as "pigs."  (See Docket Nos. 36 ¶¶ 9-10; 48-1 ¶¶ 9-10.) Maley allegedly made crass comments regarding a coworker's constipation problem, claiming that all she needed was "somebody to fuck her in the ass real good."  (See Docket Nos. 36 ¶ 8; 48-1 ¶ 8.)  Plaintiff's coworkers also testified that Maley made these derogatory comments regarding blacks, Puerto Ricans, and females while at work.  (See Docket No. 36-1 at 219-22.)

Plaintiff filed a second statement on May 9, 2011, in which he again alleged that Maley referred to guests as "fucking niggers," and repeated that Maley requested marijuana.  (See Docket Nos. 27-1 ¶ 41; 35 ¶ 41.)  Also that day, Plaintiff filed a "Loss Prevention Statement," which indicated he had been concerned about the Maley situation for three days and would not go to work, but again did not mention he was discriminated against due to his race or national origin.  (See Docket Nos. 27-1 ¶¶ 42-43; 35 ¶¶ 42-43.)[1]  Plaintiff also filed a report with the State Insurance Fund Corporation ("SIFC") claiming work-related injuries and was placed on rest.  (See Docket Nos. 27-1

---

[1]  Both parties agree to these facts, but the court is unable to locate the Loss Prevention Statement in the record.  As this fact is not dispositive, the court simply notes it.

**Civil No. 12-1325 (GAG)**

¶¶ 44-45; 35 ¶¶ 44-45.)

During the investigation, Maley denied the allegations brought against him.  (See Docket Nos. 27-1 ¶ 47; 35 ¶ 47.)  Wyndham was unable to substantiate the claims raised by Plaintiff and his coworkers and decided to advise Maley on company policy and work environment practices. (See Docket Nos. 27-1 ¶¶ 48-49; 35 ¶¶ 48-49.)

After participating in the investigation, Plaintiff alleges he was immediately subjected to retaliation.  Plaintiff claims Maley was the mastermind behind a sabotage campaign, dispatching Merced Garcia ("Garcia") to be his hatchetwoman.  (See Docket Nos. 36 ¶ 12; 48-1 ¶ 12.)  Plaintiff claims Maley created a warzone, started pressing Plaintiff for information, acted like he was going to "lose it," and enlisted Garcia to act so rudely to clients that they would walk out.  (See id.)

Maley traveled to South Florida for a three-day business trip starting on May 24, 2011.  (See Docket Nos. 27-1 ¶ 50; 35 ¶ 50.)  During that time, Plaintiff filed a discrimination charge against Defendants before the Anti-Discrimination Unit ("ADU").  (See Docket Nos. 27-1 ¶ 51; 35 ¶ 51.) This filing approximates the latest date of discrimination as May 8, 2011 and that it was a continuing action.  (See Docket No. 33-2.)  After receiving the ADU complaint, Lama contacted Plaintiff to discuss the discrimination and the allegations contained in the complaint, but Plaintiff told Lama she should contact his attorney.  (See Docket Nos. 27-1 ¶ 53; 35 ¶ 53.)  On June 21, 2011, in response to a voicemail by Lama, Plaintiff sent her an e-mail that can be summarized as expressing his indignation that Wyndham's human resources department operates to protect the managers.  (See Docket Nos. 27-1 ¶ 54; 35 ¶ 54.)  The two e-mailed each other the next day when Plaintiff informed Lama that he looked forward to their future discussions and that he would bring his attorney with him.  (See Docket Nos. 27-1 ¶ 55; 35 ¶ 55.)

At that time, at least three other employees had filed complaints with the ADU and were receiving treatment at SIFC.  (See Docket Nos. 27-1 ¶ 56; 35 ¶ 56.)  These complaints include similar conduct regarding derogatory comments based on race and sex.  Due to these allegations, Maley was transferred out of Puerto Rico to Pompano Beach, Florida. (See Docket Nos. 27-1 ¶¶ 57-

Civil No. 12-1325 (GAG)

59; 35 ¶¶ 57-59.)  Maley left Puerto Rico by July 1, 2011.  Plaintiff resigned from Wyndham on July 27, 2011.  (See Docket Nos. 27-1 ¶ 60; 35 ¶ 60.)

## IV.    Discussion

Plaintiff presses claims of discrimination under Title VII due to race and national origin, alleging Maley's conduct produced a hostile work environment.  Plaintiff also asserts a cause of action for retaliation under Title VII and various local law claims.  The court addresses each in turn.

### A.    Race and National Origin Discrimination[2]

Plaintiff's two discrimination claims both invoke hostile work environment doctrine .  Title VII "makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.'"  Vance v. Ball State Univ., 133 S. Ct. 2434, 2440 (2013) (quoting 42 U.S.C. § 2000e-2(a)(1)).  Title VII has been construed expansively to protect against the creation of a work environment "heavily charged" with racial or national origin discrimination.  See id. (citing Rogers v. EEOC, 454 F.2d 234, 238 (5th Cir. 1971)).  In Meritor Savings Bank, FSB v. Vinson, the Court held the creation of a hostile work environment violated Title VII.  477 U.S. 57, 65-66 (1986) (stating "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult.").  Hostile work environment claims based on the various protected classes are evaluated under similar standards.  See Faragher v. Boca Raton, 524 U.S. 775, 787 n.1 (1998) (harmonizing framework between racial and sexual discrimination); see also Vance, 133 S. Ct. at n.3.  To demonstrate a claim under Tile VII

_____

[2]  At various points, Plaintiff seems to make a claim for sex discrimination.  He states he is a member of a protected class because he is male.  (See Docket No. 43 at 14.)  Plaintiff complains of several lewd and bawdy comments made by Maley towards female coworkers.  (See id. at 15.)  This confusion is apparent within Plaintiff's memorandum.  At one point he states, "The sexual and national origin nature of the comments and actions of Maley demonstrate that the harassment was based on [Plaintiff's] national origin."  (Id. at 16.)  Despite these remarks, the court understands Plaintiff is not asserting a discrimination claim based on sex and focuses its analysis on the remaining claims.

**Civil No. 12-1325 (GAG)**

asserting the hostile work environment theory, Plaintiff must demonstrate:

> (1) that he is a member of a protected class; (2) that he was subjected to unwelcome [race or national origin] harassment; (3) that the harassment was based upon [Plaintiff's race or national origin]; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and create an abusive work environment; (5) that [the] objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and that he in fact did perceive it to be so; and (6) that some basis for employer liability has been demonstrated.

Perez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 27 (1st Cir. 2011) (citing Agusty-Reyes v. Dep't. of Educ. of P.R., 601 F.3d 45, 52 (1st Cir. 2010) (discussing hostile work environment in sexual harassment case)). In applying this test, the court evaluates the claim "in light of the 'record as a whole' and mindful of 'the totality of the circumstances.'" Id. at 29 (quoting Meritor Savings Bank, 477 U.S. at 69). While there is no rigid formula, the court considers several factors when determining the existence of a hostile work environment. See Valentin-Almeyda v. Mun. of Aguadilla, 447 F.3d 85, 84 (1st Cir. 2006). In analyzing the conduct, the court weighs: its frequency; severity; whether it was physically threatening, humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the employee's work performance. Id. at 94 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). With this framework in mind, the court applies these factors to the facts of the case.

1.      Member of a Protected Class

Plaintiff states he is a member of a protected class because he is a male and Puerto Rican. (See Docket No. 43 at 14.) Being Puerto Rican sufficiently demonstrates membership in a protected class for national origin discrimination. Zayas-Ortiz v. Becton Dickinson Caribe, Ltd., 878 F. Supp. 2d 351, 355 (D.P.R. 2012) (citing Aguayo v. Napolitano, 810 F. Supp. 2d 406 (D.P.R. 2011)). Plaintiff's evidence regarding his race-based claim relies on the same evidence as his national origin claim. These two are not one in the same. Plaintiff points to nothing beyond his being Puerto Rican

**Civil No. 12-1325 (GAG)**

to substantiate a claim based on race.  Therefore, only his national origin claim survives.[3]

2.      Unwelcome Harassment Based on Plaintiff's National Origin

Much of the complained of behavior -if any at all- does not relate to Plaintiff's membership in a protected class.  As often stated, Title VII is not a general civility statute.  See Ahern v. Shinseki, 629 F.3d 49, 59 (1st Cir. 2010) ("Title VII does not create a general civility code for the workplace.").  Title VII does protect against discrimination based on specific protected characteristics.  But the evidence Plaintiff relies upon to meet this prong of the *prima facie* standard is unrelated to his claims of discrimination.  In fact, much of this story concerns discrimination against other individuals.  While Maley's comments are derogatory towards women and blacks, Plaintiff does not belong to those groups.  Other than the associational discrimination discussed in the footnote, the court is unaware of, and Plaintiff did not produce, any precedent allowing a claim for conduct not based on a plaintiff's protected class.  The court does not question that Maley's alleged conduct was offensive and unwelcome, but because it does not relate to Plaintiff's membership in a protected class, the court cannot rely upon it to bolster Plaintiff's case.

As to the relevant instances of unwelcome harassment, Plaintiff alleges Maley called Puerto Ricans "pigs."  He questioned why Plaintiff would bother to spend time making sales to Puerto Ricans because Puerto Ricans have no money and all receive government subsidies.  For example, Maley made fun of a coworker due to his Spanish accent when he spoke English.  These instances

---

[3]   Plaintiff could have argued his association with his ex-wife gave rise to race-based discrimination.  See Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc., 173 F.3d 988, 994 (6th Cir. 1999) (holding Title VII protected white employee discharged due to discrimination towards biracial child).  In the retaliation context, as recently as 2012, the Supreme Court held Title VII was violated when an employee was terminated due to the protected acts of his fiancee.  Thompson v. N. Am. Stainless, LP, 131 S. Ct. 863 (2011).  Plaintiff testified he was offended by Maley's comments regarding black customers.  However, because Plaintiff's brief is completely devoid of any arguments or supporting materials supporting this theory, the court does not analyze the issue any further.  See U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (holding litigant has the "obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.") (internal quotation marks omitted) (internal citations omitted)).

25

**Civil No. 12-1325 (GAG)**

are relevant to Plaintiff's national origin claim.  But importantly, none of this conduct was directed at Plaintiff.  Certainly, none of this evidence is directed towards Plaintiff for being Puerto Rican.  While the comments are derogatory towards Puerto Ricans and Plaintiff is Puerto Rican, there is nothing to connect the comments to Plaintiff other than his presence in the room at the time.

All of the alleged discriminatory conduct, while offensive, is not related to Plaintiff's status as a member of a protected class.  Therefore, Plaintiff has failed to meet the *prima facie* showing for his hostile work environment claim.

### 3.      The Severe or Pervasive Standard

Even if Plaintiff's claim sufficiently meets the previous prong, Plaintiff still does not meet his *prima facie* burden.  The standards for judging hostility are sufficiently demanding "to ensure that Title VII does not become a 'general civility code.'" Faragher, 524 U.S. at 788 (internal citations and quotations omitted).  "[Title VII] forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998).  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview." Harris, 510 U.S. at 21.  The Supreme Court has clarified that "conduct must be extreme to amount to a change in the terms and conditions of employment." Id.

The severe or pervasive inquiry is highly fact-specific.  Molina-Quintero v. Caribe G.E. Power Breakers, Inc., 234 F. Supp. 2d 108, 112 (D.P.R. 2002) (citing Conto v. Concord Hosp., Inc., 265 F.3d 79, 81 (1st Cir. 2001)).  To assess whether conduct is sufficiently severe or pervasive to create a hostile environment, the court must consider the totality of the circumstances. See Medina v. Adecco, 561 F. Supp. 2d 162, 173 (D.P.R. 2008).  There is no mathematically precise test used to determine whether a plaintiff has presented sufficient evidence that he or she was subjected to a severely or pervasively hostile work environment. Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 83 (1st Cir. 2006) (quoting Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003)).  As

10

Civil No. 12-1325 (GAG)

1   previously stated, the factors to be considered include "'the frequency of the discriminatory conduct;

2   its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether

3   it unreasonably interferes with the employee's work performance.'" Marrero v. Goya of P.R., Inc.,

4   304 F.3d 7, 18-19 (1st Cir. 2002) (quoting Harris, 510 U.S. at 23).

5        In characterizing the hostile or abusive workplace, courts have drawn a continuum between

6   commonplace indignities and actionable harassment.  Offhand remarks, simple teasing, tepid jokes,

7   and isolated incidents are at the commonplace indignities end of the continuum.  This type of

8   behavior, standing alone, usually does not amount to a hostile work environment.  Severe or

9   pervasive discriminatory remarks, ridicule, and intimidation fall at the other end of the continuum

10  and may support a jury verdict finding a hostile work environment.  Noviello v. City of Boston, 398

11  F.3d 76, 92 (1st Cir. 2005); Marrero, 304 F.3d at 19; Figueroa Reyes v. Hosp. San Pablo del Este,

12  389 F. Supp. 2d 205, 213 (D.P.R. 2005).  Determining where along the continuum specific conduct

13  lies is a difficult task typically best left to a jury.  Figueora-Garcia v. Lilly del Caribe, Inc., 490 F.

14  Supp. 2d 193, 205 (D.P.R. 2007) (citing Molina-Quintero, 234 F. Supp. 2d at 111-12).

15       In judging whether Plaintiff was subjected to severe or pervasive harassment, the court first

16  must address what type of conduct applies to Plaintiff's claim.  At various points, Plaintiff complains

17  of discrimination based on race, national origin, and sex.  However, only Plaintiff's national origin

18  claim survives.  It is also clear that the racial comments Plaintiff cites were not targeted towards

19  Plaintiff; rather, towards potential customers.  Plaintiff took offense because his child is racially

20  diverse.

21       Some courts analyze whether a hostile work environment has been established based on the

22  different protected characteristics separately.  See Harfford v. Seidner, 183 F.3d 506, 514 (6th Cir.

23  1999) (analyzing hostile work environment claim for race and religion).  However, the prevailing

24  view is that courts should view the conduct in totality.  See Kosereis, 331 F.3d at 216 (citing

25  O'Rourke v. City of Providence, 235 F.3d 713, 729 (1st Cir. 2001)).  Courts have relied upon

26  various forms of discrimination to support the finding of a hostile work environment.  See Blethen

27

28                                              11

**Civil No. 12-1325 (GAG)**

v. MaineGeneral Rehabilitation & Nursing Care, No. 1:11-cv-277-DBH, 2012 WL 4325824, at *
19-20 (D. Me Aug. 1, 2012); Andujar v. Nortel Networks, Inc., 400 F. Supp. 2d 306, 329 (D. Mass.
2005) (comparing Massachusetts state law and federal law on this point). This makes sense as
hostile work environment claims are different from discrete acts of discrimination. See Andujar,
400 F. Supp. 2d at 330 (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002)).
To sustain a hostile work environment claim, Plaintiff must demonstrate repeated conduct over the
course of time. See Nat'l R.R. Passenger Corp., 536 U.S. at 115. Therefore, when evaluating a
hostile work environment claim, the court evaluates all the discriminatory conduct, not just those
instances related to his national origin. If not obvious, the court should point out that discriminatory
or hostile comments directed at Plaintiff are stronger than generally offensive comments. There is
a balance between being required to tolerate insulting behavior and being required to endure an
utterly discriminatory atmosphere. As the Judge Coffin stated:

> I do not wish to be interpreted as holding that an employer's mere utterance
> of an ethnic or racial epithet which engenders offensive feelings in an
> employee [is proscribed]. But by the same token I am simply not willing to
> hold that a discriminatory atmosphere could under no set of circumstances
> ever constitute an unlawful employment practice. One can readily envision
> working environments so heavily polluted with discrimination as to destroy
> completely the emotional and psychological stability of minority group
> workers, and I think [. . .] Title VII was aimed at the eradication of such
> noxious practices.

Rogers, 454 F.2d at 237 (Coffin J., dissenting). The court must determine whether the behavior
creates such a "polluted" atmosphere to invoke Title VII protection.

Plaintiff was employed by Wyndham for roughly five months. (See Docket No. 36-1 at 43.)
During this time, Plaintiff claims to have been subjected to a number of discriminatory comments;
however, none directed at him. Plaintiff states Maley called Puerto Ricans "pigs" when they were
traveling to a grocery store together. (See Docket No. 36-1 at 22.) Maley made fun of a coworker's
accent. Maley once commented that a combination of female coworkers would create the perfect
woman. (See Docket No. 27-13 at 6.) Maley referred to customers as "fucking niggers," seemingly
on more than one occasion. (See id.) He commented and treated Puerto Rican and black customers

12

**Civil No. 12-1325 (GAG)**

1  as "deadbeats" who did not have any money.  (See Docket No. 36-1 at 43-44.)  Finally, Plaintiff

2  points to the crude comments regarding a female coworker's constipation as further evidence of the

3  hostile work environment.

4       Evaluating these remarks, the court notes they run the gamut from fairly benign to explosive.

5  Commenting or making fun of someone's accent, while not kind, is not the type of action Title VII

6  was intended to prohibit.  However, referring to black customers as "fucking niggers," crudely

7  discussing a coworker's medical problems, and pining for the perfect woman with various coworkers

8  bodily attributes is the type of conduct Title VII was intended to make unlawful.  The court,

9  however, finds these allegations insufficient to meet Title VII's standard.

10      None of these comments were directed towards Plaintiff.  At best, Maley made only a few

11  comments per month, making these remarks more episodic than frequent.  See Lee-Crespo v.

12  Schering-Plough Del Caribe Inc., 354 F.3d 34, 46 (1st Cir. 2003).  While some comments are

13  severely derogatory, the others are mild.  The comments do not appear to be threatening.  Plaintiff

14  may have felt uncomfortable, as most reasonable employees would, but the conduct cannot be said

15  to be so severe as to have fundamentally changed his working conditions.  See Torres-Santiago v.

16  Alcaraz-Emmanuelli, 617 F. Supp. 2d 26, 37 (D.P.R. 2009) (holding treatment must be so severe

17  or pervasive as to alter working conditions).

18      This case is peculiar in that none of the harassing comments were directed at Plaintiff and

19  most of them do not correlate with Plaintiff's membership in a protected class.  Therefore, the court

20  finds Plaintiff to have failed to meet his burden as to this prong.

21            4.     Objectively and Subjectively Offensive Conduct

22      There can be no question that Maley's conduct was both objectively and subjectively

23  offensive. Throughout Plaintiff's deposition, he testified as how he subjectively interpreted Maley's

24  comments as offensive.  (See e.g., Docket No. 36-1 at 45.)  Similarly, a factual dispute exists over

25  whether a reasonable person would have found this conduct to be offensive.

26            5.     Employer Liability

27

28                                      13

Civil No. 12-1325 (GAG)

The final prong requires Plaintiff to demonstrate some basis for employer liability.  See Gerald, 707 F.3d at 19-20.  Different rules apply depending on whether the harassing employee is a coworker or a supervisor.  Vance, 133 S. Ct. At 2441.  "When it is a supervisor that creates an actionable hostile work environment, the employer is vicariously liable." See id.; Faragher, 524 U.S. at 807 ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate [. . .] authority over the employee.").  The court need not detail all the defenses available to Wyndham in this case because Maley was Plaintiff's supervisor and took a tangible employment action.  Therefore, under the present facts, Plaintiff is able to demonstrate employer liability.

### B.  **Faragher-Ellerth** Defense

The applicability of the Faragher-Ellerth defense relies upon whether Plaintiff suffered a tangible employment action.  See Faragher, 524 U.S. at 807; Ellerth, 524 U.S. at 765.  Because the court found Plaintiff's hostile work environment claim failed, there is no need to extensively analyze the applicability of this affirmative defense.  However, it is worth noting that, because Plaintiff was retaliated against due to his participation in a protected activity, a tangible employment action occurred that would preclude Wyndham from asserting this defense.  Faragher, 524 U.S. at 788; Ellerth, 524 U.S. at 765.

For the foregoing reasons, the court finds Plaintiff fails to demonstrate the *prima facie* showing of a hostile work environment.  Therefore, his claim under Title VII for national origin discrimination fails.   The court **GRANTS** Defendant's motion for summary judgment and **DISMISSES** Plaintiff's Title VII claims for discrimination.

### C.  **Retaliation**

A *prima facie* case of retaliation under Title VII must establish three elements: (1) that plaintiff engaged in a protected activity; (2) a materially adverse employment action that harmed the plaintiff inside or outside the workplace and that was harmful enough to "'dissuade a reasonable worker from making or supporting a charge of discrimination,'" and; (3) that the adverse action

14

Civil No. 12-1325 (GAG)

1    taken against the plaintiff was casually linked to his or her protected activity.  <u>Bibiloni Del Valle v.
2    Puerto Rico</u>, 661 F. Supp. 2d 155, 168 (D.P.R. 2009) (quoting <u>Mariani-Colon v. DHS</u>, 511 F.3d 216,
3    223 (1st Cir. 2007)).  Establishing a *prima facie* case of retaliation is a "relatively light burden."
4    <u>Mariani-Colon</u>, 511 F.3d at 224 (citing <u>Pomales</u>, 447 F.3d at 85).

5        Once the plaintiff satisfies his *prima facie* burden, the defendant must produce a legitimate,
6    non-retaliatory reason for the adverse action.  <u>Enica v. Principi</u>, 544 F.3d 328, 343 (1st Cir. 2008)
7    (citing <u>Calero-Cerezo v. DOJ</u>, 355 F.3d 6, 26 (1st Cir. 2004)).  "If the employer's evidence creates
8    a genuine issue of fact, the presumption of discrimination drops from the case, and the plaintiff
9    retains the ultimate burden of showing that the employer's stated reason for the challenged actions
10   was in fact a pretext for retaliating."  <u>Acosta v. Harbor Holdings & Operations, Inc.</u>, 674 F. Supp.
11   2d 351, 366 (D.P.R. 2009) (quoting <u>Billings v. Town of Grafton</u>, 515 F.3d 39, 55 (1st Cir. 2008)).

12       Title VII's anti-retaliation provision differs from its substantive provision in that the latter
13   seeks to prevent injury to individuals based on who they are, while the former seeks to prevent harm
14   to individuals based on what they do.  <u>DeCaire v. Mukasey</u>, 530 F.3d 1, 19 (1st Cir. 2008) (citations
15   omitted) (internal quotation marks omitted).  "The relevant question is whether [the employer] was
16   retaliating against [the plaintiff] for filing a complaint, not whether he was motivated by gender bias
17   at the time."  <u>DeCaire</u>, 530 F.3d at 19.  Accordingly, for the purpose of a retaliation claim, the
18   "'relevant conduct is that which occurred *after* the [plaintiff] complained about his superior's
19   [discriminatory]'" acts.  <u>Acosta</u>, 674 F. Supp. 2d at 365 (alterations and emphasis in original)
20   (quoting <u>Quiles-Quiles v. Henderson</u>, 439 F.3d 1, 8 (1st Cir. 2006)).

21       Defendants concede elements one and three by only arguing that Plaintiff was not subjected
22   to a materially adverse employment action.  (*See* Docket No. 28 at 20.)  "The antiretaliation
23   provision protects an individual not from all retaliation, but from retaliation that produces an injury
24   or harm."  <u>Burlington Northern and Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 67 (2006).  A materially
25   adverse employment action is one that a reasonable employee would have found materially adverse.
26   <u>See</u> <u>id.</u>  The emphasis of the Court's reasoning is that it cannot simply be a trivial harm, but must

27

**Civil No. 12-1325 (GAG)**

1    be material, something with real impact.  See id.

2         Plaintiff does not argue he was terminated or subjected to additional harassment; rather he

3    claims his direct supervisor, the one he testified against, directed another subordinate to sabotage

4    a potential sale.  (See Docket Nos. 36 ¶ 12; 48-1 ¶ 12.)  This is not a trivial part of Plaintiff's

5    employment; rather, its essence.  He was hired to sell vacation packages to customers.  When

6    another coworker, at the direction of his immediate supervisor, undercuts a colleagues attempts to

7    make sales, it jeopardizes his effectiveness.  This action is material.

8         Defendants argue this sabotage occurred one time before Plaintiff sought medical help.

9    Therefore, Plaintiff could not have materially suffered from an adverse employment action.

10   However, there is no requirement that Plaintiff suffer numerous adverse employment actions to

11   demonstrate a viable Title VII retaliation claim.  One adverse employment action is sufficient to

12   allow a claim proceed.  See Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 52-53 (1st Cir.

13   2010) (allowing retaliation claim when plaintiff only complained of termination as retaliation).

14   Finally, although not separately actionable, a number of events can comprise a tangible employment

15   action when combined.  See Rand v. Town of Exeter, Case No. 11-cv-55-PB, 2013 WL 5461839,

16   at *7-8 (D.N.H. Oct. 2, 2013) (holding factual dispute as to retaliation claim when negative job

17   performance evaluations, refusal to provide access to personnel record, refusal to renew license,

18   administrative leave and eventual termination followed plaintiff's EEOC complaint).  Additionally,

19   Plaintiff testified that Maley acted like he was in a "war zone." (See Docket No. 36-1 at 32.)  Maley

20   made it a difficult situation.  (See id. at 57.)

21        While not raised by the parties, the timing of these events strengthens Plaintiff's argument

22   that this sabotage was retaliatory conduct.  "[C]ausation may be inferred from a very close temporal

23   relationship between the protected activity and the adverse action." Velazquez-Ortiz v. Vilsack, 657

24   F.3d 64, 72 (1st Cir. 2011).  Plaintiff alleges the work environment changed immediately after he

25   participated in the investigation of Maley.  (See Docket No. 36-1 at 13.)  While not dispositive of

26   the issue, the temporal proximity strengthens Plaintiff's claim that these actions were taken in

27

28                                              16

**Civil No. 12-1325 (GAG)**

retaliation for his participation in protected activity.  Therefore, the court **DENIES** Wyndham's motion for summary judgment on Plaintiff's retaliation claim.

### D.  Supplemental Claims

Briefly touching upon Plaintiff's supplemental claims, the court can quickly dispense of the Law 100 claim.  The First Circuit previously held that Title VII and Law 100 are analogous regarding race and national origin discrimination claims.  See Gerald, 707 F.3d at 16.  As such, the court **GRANTS** Wyndham's motion for summary judgment as to this claim.  Similarly, Article II, § 1 of the Puerto Rico Constitution prohibits discrimination based on race, color and sex.  The court **GRANTS** Wyndham's motion on this claim as well.

Similarly, Act 115 is Puerto Rico's anti-retaliation statute, is closely related to Title VII's anti-retaliation provision.  Act 115 requires Plaintiff to demonstrate that he: "(1) participated in an activity protected by §§ 194 *et seq.,* and; (2) was subsequently discharged or otherwise discriminated against." Collazo, 617 F.3d at 45 (internal quotation marks omitted) (internal citations omitted).  For the reasons stated above, the court **DENIES** Defendants' motion for summary judgment on Plaintiff's anti-retaliation claim under local law.

## V.  Conclusion

For the foregoing reasons, the court **GRANTS in part and DENIES in part** Wyndham's motion for summary judgment at Docket No. 27.  (Docket No. 105.)

**SO ORDERED**

In San Juan, Puerto Rico this 6th day of November, 2013.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge

17